**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Steven Bruce TONDRE, Defendant—
Appellant.**

No. 01–50715.

D.C. No. CR–01–00276–RMT–1.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2002.

Decided Oct. 10, 2002.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Before SCHROEDER, Chief Judge, W. FLETCHER, Circuit Judge, and WEINER,* District Judge.

## MEMORANDUM**

Petitioner Stephen Bruce Tondre appeals his sentence following his guilty plea on four misdemeanor counts of introducing misbranded dietary supplements into interstate commerce. He challenges the sentence in three respects. First, he argues that the probation condition requiring him to "remove his website selling EXP" (a dietary supplement that he claimed was an "AIDS cure") is unconstitutionally vague. Second, he argues that, to the extent this condition requires shutting down his entire website, it is a greater deprivation of his First Amendment interests than is reasonably necessary to meet the purposes of sentencing. Finally, he argues that the district court erred in requiring him to pay restitution in an amount reflecting the harm to all 41 of his victims when his guilty plea included only four victims. For the reasons discussed below, we reject Petitioner's first two challenges, but we reverse and remand for resentencing with respect to the amount of restitution.

## I

■ The probation condition requiring that Petitioner "remove the website selling EXP" is "sufficiently clear to inform him of what conduct will result in his being returned to prison," and thus withstands constitutional attack. *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002). "[T]he website selling EXP" clearly refers to the website Petitioner operated, from September 1997 through February 2001, which advertised and solicited sales of EXP. The order to "remove" that site simply means that Petitioner must completely cease operation of a website at that web address. Petitioner's claim that "a person of ordinary intelligence," *see id.* (quoting *Grayned v. City of Rockford*, 408

---

* The Honorable Charles R. Weiner, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)), would misunderstand the order as allowing him to maintain a website at that address so long as he ceased "selling" EXP is untenable. As a separate and distinct condition of probation Petitioner is forbidden from selling anything (or soliciting funds) over the Internet during the period of supervision. If the order to "remove the website" required only that Petitioner refrain from selling EXP on the site, the condition would be redundant.

We recognize that the district judge might have been more direct in answering Petitioner's questions at the sentencing hearing. However, any ambiguity this exchange injected into the plain meaning of the condition dissipated when the prosecutor asked, "Does your order for him to remove the website within ten days still stand?," and the judge answered with an unequivocal "yes."

**II**

■ Nor was the order to remove the website overbroad. Probationers do not enjoy the absolute liberty to which other citizens are entitled, but only conditional liberty dependent on observance of probation restrictions. A district court has broad discretion in setting conditions of probation or supervised release, including restrictions that infringe on fundamental rights. *See United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991). Probation conditions must, however, "involve only such deprivations of liberty ... as are reasonably necessary for" the statutorily defined sentencing purposes to be met. 18 U.S.C. § 3563(b). These purposes include "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from

further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

We hold that standard is satisfied here. The district court reasonably could have believed that shutting down the entire website was necessary to prevent further criminal violations by Petitioner and to protect the public from the misinformation he was convicted of disseminating. *See United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir.1988) (listing cases in which restrictions on speech have been upheld as probation conditions in order to "protect the public from a situation that might lead to a repetition of the same crime"); *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir.1997) ("Supervisory conditions that implicate fundamental rights such as freedom of speech and freedom of association are subject to careful review, but if primarily designed to meet the ends of rehabilitation and protection of the public, they are generally upheld.").

We note that, as the government conceded at oral argument, Petitioner is not barred by the terms of the probation from creating a website *at a new address*. Of course, such a website cannot be operated in violation of the other conditions of Petitioner's probation, or otherwise in violation of law.

**III**

■ We agree with Petitioner that the restitution order of $12,044, which represented the economic harm sustained by all 41 victims, was too broad. While a court can issue a restitution order in excess of losses stemming from the counts to which the defendant pled guilty, the defendant must have explicitly "agree[d] to pay heightened restitution as consideration for

**130**

the government's dropping of the other counts." *United States v. Phillips,* 174 F.3d 1074, 1077 (9th Cir.1999); *see also United States v. Baker,* 25 F.3d 1452, 1456 (9th Cir.1994). The Petitioner did not do so here.

■ Contrary to the government's assertion, the district court did have statutory authority to order restitution as to the four victims. Courts may order restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." Crime Control Act of 1990, Pub.L. No. 101–647, § 2509, 104 Stat. 4789, 4863 (1990) (codified at 18 U.S.C. § 3663(a)(3)). The plea agreement in this case plainly states that "Defendant understands that the court may order him to pay restitution to purchasers of his colloidal silver product, namely EXP." We therefore remand for the entry of a new restitution order appropriately tailored to compensate the four named victims.

Finally, we reject the government's request that the district court be permitted to reconsider the fine on remand. The government did not object to the $4,000 fine at the time of sentencing and did not appeal that fine to this court.

AFFIRMED in part and REVERSED in part. Restitution order VACATED. REMANDED for entry of a new restitution order.